UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

_____

ANN SEYBOLDT,

                          Plaintiff,      **COMPLAINT**

- vs -

                                  Civil No. 22-774

LINDE, INC. A DELAWARE CORPORATION,

LINDE U.S. PENSION PLAN, and

ADMINISTRATION AND INVESTMENT
COMMITTEE FOR THE LINDE U.S. RETIREMENT
PLANS,

                          Defendants.
_____

Plaintiff, ANN SEYBOLDT, through her attorney, CHRISTEN ARCHER PIERROT, ESQ., for her complaint against the Defendant, alleges:

## BACKGROUND

1. This is an action arising under the Employee Retirement Income Security Act of 1974, as amended, 29 U.S.C. §1001 *et seq*. ("ERISA"), to recover benefits due under an employee benefit plan.

## JURISDICTION AND VENUE

2. This Court has jurisdiction pursuant to ERISA §502(e), 29 U.S.C. §1132(e).

3. Venue is properly laid in this district pursuant to Section 502(e)(2) of ERISA, 29 U.S.C. §1132 (e)(2) and 28 U.S.C. §1391(b), because the acts complained of occurred in this

district, because Plaintiff resides in this district, and because Defendants conduct business and employee benefit affairs in this district.

## PARTIES

4. The plaintiff, ANN SEYBOLDT, (hereinafter referred to as "Plaintiff"), at all times hereinafter mentioned was and still is a resident of Buffalo, in the County of Erie and State of New York.

5. Upon information and belief, Defendant LINDE, INC. A DELAWARE CORPORATION (hereinafter referred to individually as "Linde" or collectively as "Defendants") is a company incorporated under the laws of Delaware and doing business at various locations in Western New York. Linde is successor to Praxair, Inc., following a merger in or around 2019 and a name change in or around September 2020. All references to Linde, herein, are intended to include Praxair, Inc.

6. Upon information and belief, Defendant LINDE U.S. PENSION PLAN, (hereinafter referred to individually as "the Plan" or collectively as "Defendants"), is and was at all relevant times an "employee pension benefit plan," and more specifically a "defined benefit plan," within the meaning of ERISA §§ 3(2)(A) and 3(35), 29 U.S.C. §§ 1002(2)(A) and 1002(35).

7. Linde is the sponsor and a named fiduciary of the Plan, within the meaning of ERISA §§ 3(16)(A)-(B), 402(a), 29 U.S.C. §§ 1002(16)(A)-(B), 1102(a), and is sued in each of these capacities.

8. Upon information and belief, Defendant ADMINISTRATION AND INVESTMENT COMMITTEE FOR THE LINDE U.S. RETIREMENT PLANS (hereinafter

referred to individually as "Committee" or collectively as "Defendants") is, and at all relevant times has been, the Plan and Claims Administrator for and a named fiduciary of the Plan, within the meaning of ERISA §§ 3(16)(A)-(B), 402(a), 29 U.S.C. §§ 1002(16)(A)-(B), 1102(a), and is sued in each of these capacities.

## STATEMENT OF THE CASE

9. At all times from December 1999 through the present, Plaintiff has been a common law employee of Linde, working at 175 East Park Drive, Tonawanda, New York.

10. Between December 1999 and December 2003, Plaintiff's services were provided to Linde through its contract with a third-party employment agency, Kelly Services, Inc.

11. At all times since December 15, 2003, Plaintiff was directly employed by Linde.

12. At all times since December 1999, Plaintiff has received W2 compensation.

13. At all times since December 1999, Plaintiff worked alongside, received direction and control from, was trained by, and reported directly to supervisors employed directly by Linde.

14. Unbeknownst to Plaintiff, the terms of the Plan, as it was amended and restated in 1998 (hereinafter referred to as "1998 Plan terms), provide that, with certain exclusions, "an Employee of an Employer shall participate in the Plan immediately upon such Employee's Date of Hire."

15. The 1998 Plan terms further define Employee as "any individual who, under the rules applicable in determining the employer-employee relationship for purposes of Code section 3121, has the status of an employee of an Employer or an Affiliate."

16. This definition is directly premised upon Internal Revenue Code §3121(d)(2),

which provides that "any individual who, under the usually common law rules applicable in determining the employer-employee relationship, has the status of an employee."

17. Section 1.16 of the 1998 Plan defines "Date of Hire" as "the date on which an Employee first performs an Hour of Service for an Employer."

18. Section 1.35 of the 1998 Plan defines "Hour of Service" as "each hour for which an Employee is paid, or entitled to payment, for the performance of duties for an Employer . . ."

19. Section 2.5 excludes various individuals from participating in the Plan, including "independent contractors" and "Leased Employees," which the Plan unequivocally defines as "any person (other than an Employee of the Employer)" who satisfies the "Leased Employee" requirements set forth under 26 USC 414(n).

20. By its own definition, a common law employee of an entity cannot also be a "Leased Employee" of that entity. The law is clear that an individual can only be a Leased Employee of a recipient if they are also the common law employee of the leasing organization, to wit, common law employees of a recipient can never also be Leased Employees of the recipient. Because Plaintiff was, at all times, a common law employee of Linde and not of Kelly Services, Inc., she cannot be a Leased Employee of Linde, excluded from Plan participation under Section 2.5(d).

21. Likewise, and for myriad reasons, Plaintiff is also not excluded from Plan participation as an independent contractor inasmuch as she was not paid by Linde or anyone else in 1099 compensation; she was not in control of her work location, schedule, hours, projects, compensation, etc.; and she was never self-employed, which is the defining characteristic of an independent contractor.

22. Thus, pursuant to the terms of the 1998 Plan, and unbeknownst to Plaintiff, she

became a Participant in the Plan as of the first day that she became a common law employee of Linde in December 1999.

23. Upon information and belief, the Plan has never undertaken an analysis of "the rules applicable in determining the employer-employee relationship for purposes of Code section 3121," as it relates to determining the employer-employee relationship between Plaintiff and Linde or Plaintiff and Kelly Services, Inc. at any time between December 1999 and December 2003.

24. At all times prior to its amendment in or about 2002, the Plan provided for traditional pension benefits based on a participant's final average salary (hereinafter referred to as "legacy provisions").

25. Unbeknownst to Plaintiff, the Plan was amended in or about 2002 to adopt cash balance provisions, to allow participants to choose between the legacy and cash balance provisions, and to close the legacy provisions after April 30, 2002, such that all new entrants would be placed in the cash balance provisions of the Plan.

26. Prior to December 15, 2003, Defendants did not provide Plaintiff with any plan documents or summaries thereof which would have put Plaintiff on notice that, as a common law employee, she may have been eligible to participate in the Plan's legacy provisions.

27. Defendants claim to have provided Plaintiff with a copy of the 2003 Summary Plan Description for the Plan's Account-Based Design (2003 ABD SPD) after she became directly employed by Linde in December 2003.

28. The 2003 ABD SPD states that one is "not eligible to participate in the Plan if [they] are . . . characterized as a leased employee or independent contractor on Praxair's books."

29. Since the terms of the Plan do not exclude individuals who are merely

characterized as leased employees on Defendants' books, but instead only excludes those individuals who are not common law employees of Linde and who also meet the remaining enumerated requirements under 26 USC 414(n), the 2003 ABD SPD is a critical misrepresentation of the participation requirements under the Plan.

30. In March 2016, Plaintiff began inquiring about the value of her pension benefits and, specifically, Linde's calculation of her service credit.

31. In January 2020, Linde informed Plaintiff, for the first time, that her inquiries were being treated as a claim for benefits.

32. The Plan denied Plaintiff's claim in March 2020, improperly relying upon the terms of the Plan as they had been amended and restated in 2015, instead of the 1998 Plan terms, finding that "Praxair's corporate records indicate that you were employed by Kelly Technical Services and provided services to Praxair as a contractor between 1999 and 2003. As a contractor to Praxair, you were not a 'Regular/Full-Time Employee' of Praxair eligible to participate in the Plan and your employment with Kelly Technical Services does not count as Company Service Credit for Plan purposes."

33. Unlike the terms of the 1998 Plan, the 2015 Plan limited participation to Regular/Full-Time Employees who were on the Employer's payroll and scheduled to work more than 20 hours per week.

34. The March 2020 adverse decision was the first notice Plaintiff received of her right to appeal Linde's decision or to bring a lawsuit.

35. On April 10, 2020, Plaintiff, through counsel, requested a complete copy of the claim file as it exists with respect to Plaintiff's claims for benefits, all pension plan documents in effect between January 1, 1999 and December 31, 2003, and a copy of the agreement or contract,

if any, between Praxair and Kelly Services, Inc. between January 1, 1999 and December 31, 2003.

36. On May 7, 2020, Defendants responded to Plaintiff's request by producing the purported claim file, plan documents, and trust agreements. Defendants refused to produce any documents constituting an agreement or contract, if any, between Praxair and Kelly Services, Inc. between January 1, 1999 and December 31, 2003, claiming that such documents "are not relevant to, and were not considered in connection" with Plaintiff's claim for benefits.

37. On June 2, 2020, Plaintiff, through counsel, wrote to Defendants regarding the deficiencies in the claim file, specifically in that it was missing "Praxair's corporate records [that] indicate that [Plaintiff was] employed by Kelly Technical Services and provided services to Praxair as a contractor between 1999 and 2003," and reiterated her request for the agreement or contract, if any, between Praxair and Kelly Services, Inc. between January 1, 1999 and December 31, 2003.

38. A week later, Defendants responded, continuing to refuse to provide the requested documents.

39. Plaintiff submitted her appeal on June 19, 2020.

40. On August 7, 2020, Defendants wrote to Plaintiff advising that "the Committee has been working to gather historical records and information potentially relevant to Ms. Seyboldt's appeal" and extending the time to decide Plaintiff's appeal by 60-days.

41. The Committee was scheduled for a one-hour virtual Microsoft Teams Meeting for October 12, 2020 between 11 a.m. and 12 p.m.

42. On Friday, October 9, 2020, at 2:56 p.m., the Committee members were provided, by email, an 11-page, single-spaced "summary of the appeal," prepared by legal counsel, and a

"link" to the nearly 600-page administrative record that they would be considering on Monday morning.

43. The minutes for the Committee's October 12th meeting to review Ann Seyboldt's appeal state, "[a]fter considering the claim file and all of Ms. Seyboldt's arguments, the Committee concluded that Ms. Seyboldt was employed by Kelly Services and not by Praxair between 1999 and 2003 and was ineligible to participate in the Plan during such period of employment by Kelly Services. Accordingly, the Committee made a unanimous decision to deny Ms. Seyboldt's appeal."

44. On October 14, 2020, Tony Ficarra, Linde's Assistant General Counsel of Human Resources, and non-fiduciary to the Plan, (hereinafter "Ficarra") emailed the Committee members a draft decision that he had prepared denying Plaintiff's appeal setting forth reasons for the denial which not only departed from the reasoning set forth in the minutes of the Committee's October 12th meeting, but which also considered evidence that had been requested by and denied to Plaintiff.

45. The Committee members unanimously deferred to Ficarra's decision, without comment or revision.

46. On October 15, 2020, the Committee issued Ficarra's decision denying Plaintiff's appeal, which found that Plaintiff was excluded from participation in the Plan before December 15, 2003, regardless of whether Plaintiff was a common law employee of Linde, because Plaintiff was both an "independent contractor" and a "leased employee," notwithstanding that such conclusions are legally and factually mutually exclusive and notwithstanding that a common-law employee, by definition, cannot also be a leased employee (hereinafter "October 15th decision").

47. The October 15th decision did not undertake any analysis as to whether Plaintiff was a common-law employee of Linde or Kelly Services, Inc. at any time between 1999 and 2003.

48. The October 15th decision finding Plaintiff to be an independent contractor is arbitrary and capricious, unsupported by substantial evidence, and premised on an unreasonable and twisted reading of both the 1998 Plan terms and the English language. Plaintiff was never an independent contractor, much less an independent contractor for Linde, nor could Linde's books and records demonstrate as much.

49. The October 15th decision finding Plaintiff to also be an excluded leased employee, *even if she is a common law employee of Linde*, is an erroneous legal conclusion subject to *de novo* review inasmuch as the 1998 Plan terms setting forth the leased employee exclusion are directly based on 26 U.S.C. §414(n), which plainly provides that "a leased employee is any person who: (1) is *not* a *common-law employee* of the recipient, and (2) satisfies the three enumerated requirements [under §414(n)]." Burrey v. P. Gas and Elec. Co., 159 F.3d 388, 393 (9th Cir. 1998); *see also* S.Rep. No. 104–281, at 93, *reprinted in* 1996 U.S.C.C.A.N. 1567 (emphasis added) ("As under present law, the determination of whether someone is a leased employee is made *after* determining whether the individual is a common-law employee of the recipient. Thus, an individual who is not a common-law employee of the service recipient could nevertheless be a leased employee of the service recipient. Similarly, the fact that a person is or is not found to perform services under primary direction or control of the recipient for purposes of the employee leasing rules is not determinative of whether the person is or is not a common-law employee of the recipient.").

50. The October 15th decision is not subject to deferential review inasmuch as the

Committee did not draft the decision, but instead adopted in full – without comment or revisions – the draft decision denying benefits which was prepared by non-fiduciary, Troy Ficarra.

51. Further, to the extent that any or all of the October 15th decision is premised on legal conclusions, such legal conclusions warrant *de novo* review by the Court.

52. To the extent that any or all of the October 15th decision is subject to deferential review, it must be vacated as arbitrary and capricious, unsupported by substantial evidence, and premised on an unreasonable and twisted reading of the 1998 Plan terms.

**COUNT 1 – ERISA § 502(a)(1)(B) CLAIM**
**(Recover Benefits Due, Enforce Rights, and Clarify Rights Under the Plan)**

53. Plaintiff repeats and realleges the allegations contained within Paragraphs "1" through "52" with the same force and effect as if stated fully herein.

54. At all relevant times in and after December 1999, Plaintiff was an Employee within the meaning of the Plan.

55. At all relevant times in and after December 1999, Plaintiff was a Participant within the meaning of the Plan.

56. At all relevant times in and after December 1999, as a Participant in the Plan, Plaintiff was entitled to the accrual of benefits as determined under the terms of the Plan, so as long such terms are consistent with ERISA's threshold minimum requirements.

57. Pursuant to the terms of the Plan, a Participant accrues benefits based on years of pension service and pensionable earnings, calculated under whichever one of the three enumerated traditional pension formulas yields the largest benefit.

58. Pursuant to the terms of the Plan, a Participant in the Plan on April 30, 2002 had an option to choose to continue to accrue pension benefits under the Traditional Design or to

convert to the Account-Based Design.

59. Participants in the Plan as of April 20, 2002 who did not make an election remained in the Traditional Design Plan provisions.

60. All Participants who became Participants after April 30, 2002 were put into the Account-Based Design pension formula.

61. Plaintiff, as a Participant since her common law employee Date of Hire under the Plan, is entitled to have her pension benefits calculated under the one of the three formulas enumerated in the Traditional Design Plan provisions that provides her with the largest benefit.

62. A calculation of Plaintiff's benefit under any provisions outside of the Traditional Design provisions will violate the terms of the Plan and ERISA in that the future benefit Plaintiff will receive will be less than the accrued benefit to which Plaintiff is entitled under the Traditional Design provisions of the Plan.

63. Plaintiff seeks and is entitled to relief under 502(a)(1)(B) to enforce the terms of the Plan and recover the benefits due her under such terms, together with recovery of attorney's fees, pre and post-judgment interest, and any additional relief that this Court deems warranted.

**COUNT 2 – ERISA § 502(a)(1)(3)**
**(Other Equitable Relief)**

64. Plaintiff repeats and realleges the allegations contained within Paragraphs "1" through "63" with the same force and effect as if stated fully herein.

65. At all relevant times in and after December 1999, Plaintiff was an Employee within the meaning of the Plan.

66. At all relevant times in and after December 1999, Plaintiff was a Participant within the meaning of the Plan.

67. At all relevant times in an after December 1999, Defendants have been fiduciaries to the Plan and, as such, have owed certain duties to Plaintiff as a Participant in the Plan.

68. At all relevant times in and after December 1999, as a Participant in the Plan, Plaintiff was entitled to the accrual of benefits as determined under the terms of the Plan, so as long such terms are consistent with ERISA's threshold minimum requirements.

69. Pursuant to the terms of the Plan, a Participant accrues benefits based on years of pension service and pensionable earnings, calculated under whichever one of the three enumerated traditional pension formulas yields the largest benefit.

70. Pursuant to the terms of the Plan, a Participant in the Plan on April 30, 2002 had an option to choose to continue to accrue pension benefits under the Traditional Design or to convert to the Account-Based Design.

71. Participants in the Plan as of April 20, 2002 who did not make an election remained in the Traditional Design Plan provisions.

72. All Participants who became Participants after April 30, 2002 were put into the Account-Based Design pension formula.

73. Plaintiff, as a Participant since her common law employee Date of Hire under the Plan, is entitled to have her pension benefits calculated under the one of the three formulas enumerated in the Traditional Design Plan provisions.

74. Despite this, Defendants only acknowledge Plaintiff as a Participant as of December 15, 2003.

75. Defendants' failure, refusal, and/or negligence in not recognizing Plaintiff as a Participant at all times following December 1999 is a breach of the fiduciary duties that Defendants owe to Plaintiff.

76. Because of Defendants' breach of fiduciary duties, Plaintiff was never provided with an option to choose between the legacy provisions or the cash balance provisions and was unilaterally placed in the cash balance provisions of the Plan in or about December 2003.

77. Defendants' actions and/or omissions have caused Plaintiff to suffer damages in the amount of the difference between the pension benefits that Plaintiff would have been entitled to under the Traditional Design formulas of the Plan and the pension benefits to which she is currently entitled under the Account-Based Design provisions of the Plan.

78. To the extent that Plaintiff cannot recover on her claim for benefits, she seeks and is entitled to other equitable relief under 502(a)(3)(B)(i) to redress the Defendants' violations of the Plan terms and ERISA and to provide her with all other appropriate equitable and make-whole relief including surcharge of the Plan and the Plan fiduciaries, together with recovery of attorney's fees, pre and post-judgment interest, and any additional relief that this Court deems warranted.

### COUNT 3 – ERISA § 102 CLAIM
### (Failure to Provide Accurate Summary Plan Description)

79. Plaintiff repeats and realleges the allegations contained within Paragraphs "1" through "78" with the same force and effect as if stated fully herein.

80. Throughout the relevant time, ERISA § 102, 29 U.S.C. § 1022 has required that participants be furnished with a summary plan description ("SPD") that is "written in a manner calculated to be understood by the average plan participant," is "sufficiently accurate and comprehensive to reasonably apprise . . . participants and beneficiaries of their rights and obligations under the plan," and accurately sets forth both the plan's eligibility requirements, as well as the "circumstances which may result in disqualification, ineligibility, or denial or loss of benefits." ERISA § 102(a)-(b), 29 U.S.C. § 1022(a)-(b); see also 29 C.F.R. § 2520.102-3(1).

81. The SPD Defendants allege to have issued to Plaintiff was not "sufficiently accurate and comprehensive to reasonably apprise . . . participants and beneficiaries of their rights" where it contained materially false and misleading statements as to who is eligible and ineligible to participate in the Plan.

82. Defendants assert that Plaintiff is precluded from claiming benefits under the Traditional Design of the Plan because such claims would have needed to have been brought within 6 years from the time that Plaintiff knew she was not being treated as a Participant.

83. However, Plaintiff's knowledge that she was not being treated as a Participant cannot possibly give rise to the accrual of a claim until and unless she also understands that the failure to treat her as a Participant supported a cause of action under ERISA.

84. The only way for Plaintiff, as a common law employee, to discover the breach of Defendants' fiduciary duties would be for her to have had knowledge of the accurate eligibility terms set forth in the Plan.

85. Plaintiff did not have such information until May 7, 2020 when Defendants provided the historical Plan documents to Plaintiff's counsel.

86. Had Plaintiff been provided, at any time before May 7, 2020, with accurate Plan documents which would have allowed her to understand that she qualified as a Participant of the Plan at all times following her December 1999 common law employment with Linde, she would have pursued such claims at that time.

87. Plaintiff seeks relief for the Defendants' actions, omissions, violations, and breaches in this regard to include all appropriate equitable and make-whole relief, including equitable estoppel, including and not limited to precluding Defendants from arguing that Plaintiff's claim to be recognized as a Participant under the Traditional Design provisions of the

Plan is untimely, and surcharge of the Plan and Plan fiduciaries to make Plaintiff whole in the amount of difference between the pension benefits that Plaintiff would have been entitled to under the Traditional Design formulas of the Plan and the pension benefits to which she is currently entitled under the Account-Based Design provisions of the Plan, together with recovery of attorney's fees, pre and post-judgment interest, and any additional relief that this Court deems warranted.

**COUNT 4 – ERISA § 404**
**(Breach of Fiduciary Duties)**

88. Plaintiff repeats and realleges the allegations contained within Paragraphs "1" through "87" with the same force and effect as if stated fully herein.

89. Defendants are fiduciaries to the Plan.

90. ERISA imposes fiduciary duties of loyalty, care, and prudence upon Defendants as fiduciaries to the Plan. These fiduciary duties are "the highest known to the law." Donovan v. Bierwirth, 680 F.2d 263, 272 n.8 (2d Cir. 1982).

91. For the reasons set forth above, and particularly in COUNTS 1 and 3, Defendants breached their fiduciary duties to Plaintiff by not properly recognizing her as a Participant of the Plan at all times following the commencement of her common law employment in December 1999, and by failing to provide Plaintiff with Plan documents that accurately set forth the Plan's participation eligibility requirements which would have provided notice to Plaintiff that Defendants were wrong in failing to recognize her as a Participant.

92. Defendants' breaches have caused or will cause Plaintiff to suffer damages in the amount of lost pension benefits to which she is and/or should have been entitled to under the Traditional Design provisions of the Plan.

93. Plaintiff seeks relief for the Defendants' actions, omissions, violations, and breaches in this regard to include all appropriate equitable and make-whole relief, including equitable estoppel, including and not limited to precluding Defendants from arguing that Plaintiff's claim to be recognized as a Participant under the Traditional Design provisions of the Plan is untimely, and surcharge of the Plan and Plan fiduciaries to make Plaintiff whole in the amount of difference between the pension benefits that Plaintiff would have been entitled to under the Traditional Design formulas of the Plan and the pension benefits to which she is currently entitled under the Account-Based Design provisions of the Plan, together with recovery of attorney's fees, pre and post-judgment interest, and any additional relief that this Court deems warranted.

**COUNT 5 – ERISA § 503 CLAIM**
**(Failure to Provide Full and Fair Review, Procedural Irregularities)**

94. Plaintiff repeats and realleges the allegations contained within Paragraphs "1" through "93" with the same force and effect as if stated fully herein.

95. 29 C.F.R. § 2560.503-1(h)(iii) provides "that a claimant shall be provided, upon request and free of charge, reasonable access to, and copies of, all documents, records, and other information relevant to the claimant's claim for benefits."

96. Despite Plaintiff's repeated requests to be provided with documents relevant to her claim for benefits, Defendants refused to provide her with such documents.

97. Defendants then considered and relied upon those documents in its final adverse decision, which severely prejudiced Plaintiff.

98. Further, Defendants' alleged review and handling of Plaintiff's appeal does not satisfy ERISA's requirements, nor constitute a discretionary exercise by a Plan fiduciary which is entitled to review under the arbitrary and capricious standard for myriad reasons, including but

not limited to: legal counsel submitted its own summary of Plaintiff's appeal to the Committee for review; the 600-page record was provided to the Committee by email on a late Friday afternoon with insufficient time to review before its scheduled virtual meeting the following Monday morning; the denial letter departs from the reasons for denial set forth in the Committee's meeting minutes; the denial letter reached the erroneous legal conclusion that Plaintiff was an employee of Kelly Services, Inc. without undertaking an analysis of the common law employee test; the denial letter reached the erroneous legal conclusion that common law employees of a recipient can also be leased employees under 26 USC 414(n); the denial letter was prepared by a non-fiduciary legal counsel; and the denial letter was deferred to without revision or comment by any Committee member.

99. Plaintiff seeks relief in the form of an order precluding Defendants' October 15th decision from relying upon any information or documentary evidence which had been requested by, but not provided to, Plaintiff prior to submitting her appeal, or alternatively mandating that Plaintiff be permitted to expand the administrative record in this matter to respond to the new evidence and issues raised by Defendants in their final adverse decision; mandating that Defendants' October 15th decision is to be reviewed *de novo*; together with recovery of attorney's fees, pre and post-judgment interest, and any additional relief that this Court deems warranted.

**COUNT 6 – ERISA § 502(a)(3)(A) and (B)(ii) CLAIM**
**(Enjoin Acts That Violate 29 USC §1132(e)(2) and Enforce 29 USC §1132(e)(2))**

100. Plaintiff repeats and realleges the allegations contained within Paragraphs "1" through "99" with the same force and effect as if stated fully herein.

101. In 2016, the Plan was unilaterally amended to include, for the first time, a provision stating that "[a]ny action with respect to the Plan must be adjudicated by the U.S.

District Court for the District of Connecticut."

102.   Those terms were not adopted by the Plan as a result of mutual negotiations with Plaintiff.

103.   Plaintiff did not agree or otherwise consent to those terms.

104.   Plaintiff did not have an opportunity to walk away with impunity if she rejected those terms.

105.   Plaintiff did not even know of those terms until October 15, 2020.

106.   Enforcement of these terms and requiring Plaintiff to find and retain out-of-state counsel and then commence litigation in a District Court that is over 400 miles away from her home and work, is wholly unreasonable and, further, contravenes the public policy of ERISA and its stated purpose to protect the interests of participants by providing for ready access to the federal courts.

107.   This is especially critical, because according to the Plan, Plaintiff must file her action seeking review of the denial of her claim benefits on or before Saturday, October 15, 2020, in order to be considered timely, but without Connecticut based counsel who is registered to e-file, Plaintiff does not have ready access to the District Courts in Connecticut, such that she cannot file papers with the Court outside of the Clerk's Monday-Friday, 9 a.m. to 4 p.m. schedule.

## COUNT ERISA § 502(a)(1)(B) CLAIM
**(Declaratory Relief)**

108.   Plaintiff repeats and realleges the allegations contained within Paragraphs "1" through "109" with the same force and effect as if stated fully herein.

109.   A dispute exists regarding Plaintiff's rights and benefit entitlements under the

Plan, to wit, whether Plaintiff was a Participant of the Plan at any time on or after the commencement of her common law employment in December 1999.

110. Plaintiff is entitled to a declaratory judgment concerning her rights and benefit entitlements under the Plan pursuant to ERISA §502(a)(1)(B), 29 U.S.C. §1132(a)(1)(B).

**WHEREFORE**, Plaintiff prays that this honorable Court enter judgment:

a. Enjoining Defendants from enforcing the forum selection clause as being unreasonable and/or in violation of ERISA §502(e)(2);

b. Finding that, for all of the reasons set forth above, a *de novo* review applies to the review of Linde's denial of Plaintiff's claim for benefits, or alternatively, vacating Defendants' October 15th decision excluding Plaintiff from participation under the Plan at all times before December 15, 2003 because she was an independent contractor and a leased employee as arbitrary and capricious and unreasonable as a matter of law;

c. Declaring Plaintiff to be a common law employee of Linde during the time-period of 1999 through December 2003;

d. Declaring that Plaintiff has, at all times during her common law employment with Linde, met the eligibility requirements for participation in the Plan;

e. Finding that, for all of the reasons set forth above, Defendants breached their fiduciary duties to Plaintiff;

f. Awarding Plaintiff her full pension benefits to be determined under the Traditional Design provisions of the Plan or, alternatively, in order to make Plaintiff whole, ordering surcharge against the Defendants, individually or collectively, in an amount equal to the benefits that Plaintiff lost as a result of Defendants' breaches;

g. Awarding Plaintiff the attorneys' fees, expenses, expert fees, and costs she incurred in bringing these claims, pursuant to ERISA §502(g), 29 U.S.C. §1132(g); and

h. Awarding such further and additional relief under ERISA § 502(a), 29 U.S.C. §1132(a), or any other applicable law, as the Court deems fit and proper.

Dated: October 14, 2022
        Orchard Park, New York



_____
Christen Archer Pierrot, Esq.
*Attorney for Plaintiff*
3959 N. Buffalo Rd., Suite #33
Orchard Park, New York 14127
+1 716 553 9899
cap@archerpierrot.com